NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMIRIT TECHNOLOGIES, INC., <br>                 Plaintiff, <br>     v. <br> HTN WIRELESS, INC. AND SYED MUNEEB ARSHAD, <br>                 Defendants. | Civil Action No. 2:17-cv-0067 (SRC)(CLW) <br><br> **OPINION & ORDER** |

**THIS MATTER** comes before the Court upon motion by Plaintiff, Amirit Technologies, Inc. seeking leave to serve the Summons and Complaint by alternative means on Defendant, Syed Muneeb Arshad ("Arshad"). Pursuant to Federal Rule of Civil Procedure 78, the Court did not hear oral argument. Upon careful consideration of the submissions, and for the reasons set forth below, Plaintiff's motion is **DENIED**.

**I.**    **BACKGROUND AND PROCEDURAL HISTORY**

On January 5, 2017 Plaintiff filed suit against Defendants, HTN Wireless and Syed Muneeb Arshad. (Complaint, ECF No. 1.) Amirit is a New Jersey corporation that provides telecommunications services across the United States. (Compl. ¶ 1.) HTN, a business consulting and staffing firm for telecommunications systems, entered an agreement for engineering services with Amirit on March 19, 2015. (Compl. ¶ 6.) Part of the agreement included HTN issuing purchase orders to Amirit, which Amirit could accept or reject. Amirit was to invoice HTN on a monthly basis and HTN was meant to pay the invoices within thirty days. (Compl. ¶¶ 7, 8.)

Arshad is a permanent resident of California and was employed by Amirit. (Compl. ¶ 3.) On April 1, 2015 HTN issued a Purchase Order requesting Arshad be assigned to HTN. (Compl. ¶ 9.) HTN wanted to place Arshad with Nexius Inc., who was retained by Sprint, to perform

services in the Boston, Massachusetts area. (Compl. ¶ 10.) Arshad moved from California to Boston and HTN was obligated to compensate Amirit for Arshad's services. (Compl. ¶ 11.)

Several weeks after beginning work for Sprint, Arshad decided he needed to move back to the West Coast and informed Amirit that he had located a position for himself in Las Vegas. (Compl. ¶ 14.) Amirit attempted to replace Arshad, but received no response from HTN. Amirit is seeking compensation for services rendered by Arshad from April to May 2015 and HTN is refusing. HTN believes Arshad terminated his employment, constituting a breach of its agreement with Amirit and releasing HTN of any obligations under the contract. (Compl. ¶¶ 19, 20.) Because HTN has refused to pay, Amirit instituted this lawsuit in May 2016 for breach of contract. (Compl. ¶¶ 20-23.)

As part of the document production in this litigation, Amirit learned that Arshad filed a complaint with the Department of Labor about Amirit back in September 2016. Amirit is suing Arshad for defamation, accordingly. (Compl. ¶¶ 24-26.)

Plaintiff has been unable to serve Arshad with the Complaint. A process server attempted to serve Arshad with the Complaint at an address in Connecticut from January 25-27, 2017. Plaintiff obtained this address from the U.S. Department of Labor based on the complaint Arshad filed with the organization in September 2016. (Brief on Substituted Service, ECF No. 6, at 2.) The process server reported that he did not believe Arshad lived at the given address because the mailbox says "Munfer" and a U.S. Postal Service employee indicated that he never delivered mail to Arshad at that address. (*Id.*)

On February 21, 2017 Amirit's counsel contacted Arshad via email using an email address Arshad provided when he was an employee of the company. Amirit's counsel attached the Summons and Complaint to the email and asked if he would be willing to accept service of process

via mail. (Brief, at 2.) The email was not returned as undeliverable, but to date Arshad has not responded to the email. (Brief, at 2.) HTN's counsel has informed Amirit that Arshad is living in Pakistan. (Brief, at 3.) Amirit does not have Arshad's street address in Pakistan. Because Plaintiff has been unable to serve the Complaint on Arshad it now seeks an Order permitting substituted service via email.

## II. DISCUSSION

### a. Legal Standard

Federal Rule of Civil Procedure 4(f) dictates service of an individual in a foreign country allowing an individual to be served "at a place not within any judicial district of the United States" either by: (1) "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents"; (2) "if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice"; or (3) "other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f).

The United States and Pakistan are signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention").[1] Article 2 of the Convention indicates that each member State "shall designate a Central Authority which will undertake to receive requests for service coming from other contracting States."[2] Article 10 does allow for service of process through alternative means such as postal channels or judicial officers "provided the State of destination does not object." Courts addressing the validity of service by

---

[1] *See* Status Table, Members of the Organisation, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17, (last visited May 9, 2017).
[2] *See* Hague Convention on Service Abroad of Judicial and Extrajudicial Documents art. 2, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

email, have held that this method of service "does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10." *F.T.C. v. PCCare247 Inc.*, No. 12-7189, 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7, 2013). Pakistan has taken a somewhat liberal approach in signing the Hague Convention on Service and does not object to means of service articulated in Article 10. In fact, it has explicitly indicated that it does not object to "service by postal channels directly to the persons concerned . . . or directly through the judicial officers of Pakistan."[3] Given the case law it would follow that service via email would likely be an acceptable form of service for a defendant in Pakistan.

In addition to examining the relevant foreign statutes, courts must also look to the particular facts of the case to determine if service by email meets the requisite due process requirements. Courts have been willing to find that service by email alone meets the due process requirements, "where a plaintiff demonstrates that the email is likely to reach the defendant." *F.T.C.*, 2013 WL 841037, at *4. For example, in *Dubovoy* one Defendant used his email address to communicate with his broker after the summons and complaint were served, suggesting it was an active email address. There was no evidence the other defendant had accessed his email addresses but, neither email address produced an automatic reply saying it was an inoperative address. Perhaps even more importantly, there was evidence that both defendants were probably already aware of the action against them. *Sec. & Exch. Comm'n v. Dubovoy*, No. 15-6076, 2016 WL 7217607, at *3 (D.N.J. Dec. 13, 2016).

In *Celgene Corporation v. Blanche Ltd et al*, No. 16-501, 2017 WL 1282200, at *2 (D.N.J. Mar. 10, 2017), the court permitted service by email where Plaintiff had retained an investigator to serve Defendant at its address in the United Arab Emirates but was unable to locate any actual

---

[3] *See* Pakistan Declarations, Article 8, 15, 16, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=436&disp=resdn, (last visited on May 9, 2017).

company office.  The email addresses used for service where either associated with the company website or connected to the company by the retained investigator.  *Id*.  In line with these cases, the Fifth Circuit affirmed the service of an individual in Thailand by email where Plaintiff "had searched diligently, yet unsuccessfully, for [Defendant]'s mailing address; and [] [Defendant] had exhibited a willingness to communicate with [Plaintiff] by electronic mail."  *Enovative Techs., LLC v. Leor*, 622 F. App'x 212, 214 (4th Cir. 2015).

Pakistan has placed one specific limitation on service under the Hague Convention.  It is a signatory to Article 8 which allows any state to "declare that it is opposed to [] service within its territory, unless the document is to be served upon a national of the State in which the documents originate."  To properly effectuate service Plaintiff needs to ensure Arshad is a national of the United States.[4]  No evidence regarding Arshad's nationality has been presented to this Court.

The Hague Convention will not apply when "the address of the person to be served is not known."  *Bravetti v. Liu*, No. 12-7492, 2013 WL 6501740, at *4 (D.N.J. Dec. 11, 2013); *See also BP Prod. N. Am., Inc. v. Dagra,* 232 F.R.D. 263, 264 (E.D. Va. 2005) (finding defendant's address unknown after numerous attempts to serve defendant at his last known address in Pakistan, engaging an investigative firm, searching through telephone records, law enforcement records, utility records, and other personal identifying databases).  Even still, the same due process requirements will be applicable.  The Supreme Court has indicated that "[t]o comport with Due Process requirements, the method of service must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Bravetti*, 2013 WL 6501740, at *4; *citing Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  What constitutes "as sufficient

---

[4]  *See* Pakistan Declarations, *supra* n. 3.

service varies depending on each case's particular facts and circumstances." *Sec. & Exch. Comm'n*, 2016 WL 7217607, at *3.

    b. **Analysis**

The Hague Convention on Service applies in the first instance to Amirit because it is attempting to effectuate service on an individual in Pakistan. Both Pakistan and the United States are signatories to the Convention. Service by email could be an acceptable method of serving an individual in Pakistan based on the case law and specific provisions of the Convention Pakistan has addressed in its Declarations. The difficulty arises with the specific facts of this case. Plaintiff has made no showing that Arshad is in fact a "national" of the United States as required by Article 8 of the Convention. If Arshad is not a national of the United States Amirit cannot effectuate service in Pakistan by any means under the Convention.

Additionally, there is a real concern that the appropriate due process requirements would be met given the facts of this case. There is no indication that Amirit has used the provided email address recently or ever for that matter. There has been no showing that Arshad is likely to know about this lawsuit through other means. Without more, it is not clear that serving the Summons and Complaint through email is "reasonably calculated, under all the circumstances, to apprise [Arshad] of the pendency of the action." *See supra* p. 5.

If this Court were to find that Arshad's address is unknown, the Hague Convention on Service would not be applicable, but the same due process concerns would be present. Amirit indicated that it "does not have Arshad's street address in Pakistan," but makes no showing of efforts to obtain information about Arshad in Pakistan. Additionally, the address used by the process server was a Connecticut address that Arshad reportedly gave to the U.S. Department of Labor when he lodged his complaint in September 2016. No efforts were made to reach Arshad

in California, Las Vegas, or Boston all places where Arshad actually lived in the recent past. It is Plaintiff's burden to show it took reasonable efforts to try and serve Arshad, this often includes hiring a private investigator in cases such as this where individuals are domiciled abroad. Plaintiff has not made a sufficient showing that it took measures to explore all service options in the U.S. or that it made appropriate inquires in Pakistan regarding service. But, most importantly the Court is not convinced that service by email would meet the due process requirements. Sending an email and not having it bounce back, is not on its own enough to indicate email is a valid means of communicating with the Defendant. Courts considering the absence of a bounce back email as a useful fact in the due process inquiry did so in the context of other compelling factors to suggest notice requirements were met. Plaintiff has presented this fact as the single piece of information to show due process requirements would be met.

In light of the foregoing, the Court denies Plaintiff's request to effect substituted service upon Defendant, Syed Muneeb Arshad. The Court urges Plaintiff to consider the requirements of Article 8 under the Hague Convention on Service and the related notice requirements under the due process clause. Should Plaintiff wish to serve Defendant outside the bounds of the Hague Convention greater efforts must be taken to show Defendant's address is really unknown. Plaintiff's own failure to pursue adequate channels of inquiry regarding Defendant's valid address, both domestically and in Pakistan, is not reason enough to determine that Arshad's address is unknown. Should Amirit explore the appropriate channels of service, domestically and abroad, this Court is willing to reconsider the instant motion for alternative service.

## III.    CONCLUSION

**ACCORDINGLY, IT IS** on this 12th day of May, 2017,

**ORDERED** that Plaintiff's motion for substituted service is **DENIED**;

**FURTHER ORDERED** that the Clerk shall terminate ECF No. 6.

>	*s/Cathy L. Waldor*
>	**CATHY L. WALDOR**
>	**United States Magistrate Judge**